## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSE FLORES, )
)
    Plaintiff, )
)
v. )      Civil Case No.:
)
CFI RESORTS MANAGEMENT, INC., )
d/b/a WESTGATE RESORTS )
FOUNDATION, INC., )
)
    Defendant. )
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Comes Now Plaintiff, JOSE FLORES ("Plaintiff" or "Flores"), and files his Complaint against Defendant, CFI RESORTS MANAGEMENT, INC., d/b/a WESTGATE RESORTS FOUNDATION, INC. ("Defendant" or "CFI"), and in support states the following:

## NATURE OF THE CLAIMS

1.      This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.10, *et seq.* ("FCRA") to redress Defendant's unlawful employment practices against Plaintiff, including discrimination, sexual harassment, and retaliation against Plaintiff because of his sex and retaliation for Plaintiff's complaints of sexual harassment leading to his unlawful termination.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3.     This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law and the FCRA pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## THE PARTIES

5.     Plaintiff, Flores is a citizen of the United States, and is and was at all times material, a resident of the State of Florida, residing in Orange County, Florida.

6.     Defendant, CFI is a Florida for profit corporation with its principal place of business in Orlando, Florida.

7.     Plaintiff worked for Defendant at 5601 Windhover Drive, Florida 32819.

8.     Defendant is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9.     Plaintiff has complied with all statutory prerequisites to filing this action.

10.     On August 26, 2019, Plaintiff timely dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) based on sex, sexual harassment, and retaliation.

11.     Plaintiff's EEOC charge was filed within three hundred (300) days after the alleged unlawful employment practices occurred.

12.     On September 20, 2019, Plaintiff filed an Amended Charge with the EEOC.

13.     On February 24, 2020, the EEOC issued to Plaintiff a Dismissal and Notice of Rights.

14.     This complaint was filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Rights.

## FACTUAL ALLEGATIONS

15.     Plaintiff is a male.

16.     Due to Plaintiff's sex he was subjected to disparate and discriminatory conduct.

17.     Plaintiff was subjected to severe and pervasive sexual harassment at the hands of his female boss, Jackie Siegel.

18.     Plaintiff worked for Defendant in a full-time capacity as a Personal Chef in the private residence of Mr. and Mrs. Siegel, Defendant's Owners. Plaintiff's job duties included but were not limited to cooking meals for Mr. and Mrs. Siegel and their seven children who ranged in age from approximately eight (8) to seventeen (17) years old, catering birthday parties, holiday parties, or any other party Defendant hosted.

19.     Mrs. Siegel began harassing Plaintiff immediately upon his hire. Mrs. Siegel exclaimed that she was happy she finally had a Latin chef and she was "glad you're [Plaintiff] a Latin chef, you [Plaintiff] must be good in bed."

20.     Mrs. Siegel further stated to Plaintiff "I'm your boss," and that Plaintiff's job was to "make her happy or else" further referring to sex and sexual acts. Mrs. Siegel threatened Plaintiff that failure to "make her happy" would result in his termination.

21.     Mrs. Siegel continued to verbally harass Plaintiff, by stating "You're here to please me.  There are consequences for you not pleasing me," referring to sex and sexual acts.

22.     The sexual harassment continued with Mrs. Siegel asking Plaintiff to "take me to bed" or "tuck me into bed." Mrs. Siegel was referring to Plaintiff taking her to the designated "sex room" she maintained in the private residence.

23.     Mrs. Siegel escalated her harassment from verbal comments to physical touching.

24.     Mrs. Siegel rubbed herself against Plaintiff while she flashed her breasts. On another occasion, Mrs. Siegel flashed her breast again on Halloween in front of Defendant's Banquet Manager, Stephanie Hartman, when Mrs. Siegel was dressed as a "sexy nurse" and said she knew what could make Plaintiff feel better and proceeded to flash her breasts again at Plaintiff.

25.     Mrs. Siegel intentionally walked around the kitchen when Plaintiff was working wearing nothing but see-through negligee and nightgowns, further sexually harassing Plaintiff.

26.     Mrs. Siegel lifted her negligee to expose her buttocks to Plaintiff in the presence of her young daughter who witnessed such inappropriate behavior, in which her

daughter exclaimed "Mom! Don't you see the Chef is here!" to which Mrs. Siegel responded, "It's nothing he hasn't seen before."

27.     Plaintiff repeatedly asked Mrs. Siegel to stop, but she didn't.  Instead, the sexual harassment continued and on at least one occasion while Plaintiff was working in the kitchen, Mrs. Siegel approached him and asked Plaintiff how her breasts looked and further stated "you can touch them" and "if you want, you can take me to the room." In no uncertain terms Mrs. Siegel was soliciting Plaintiff to take her to the bedroom to engage in sexual acts.  Plaintiff refused every advance.

28.     During Plaintiff's employment he was also groped several times in the genitals.

29.     Each time Mrs. Siegel groped Plaintiff's genitals she would also make inappropriate comments sexual in nature.

30.     Mrs. Siegel continued to intensify her sexually harassing behavior and on more than one occasion Mrs. Siegel masturbated in front of Plaintiff.

31.     Plaintiff had enough and decided to report the sexual harassment to Tom Gentile, Executive Chef.  Mr. Gentile's first and very telling response was "you too?" Mr. Gentile continued to comment "is this a joke?" and "did you fuck her?" and took no remedial action.

32.     Mr. Gentile contacted David Clark, Food and Beverage Director, to discuss the sexual harassment inflicted on Plaintiff. Mr. Clark took no remedial action and simply stated "You should have given her what she wanted." By this point, it was clear to Plaintiff that Defendant condoned the sexual harassment and had no plans to remedy the situation.

33.     Mr. Clark contacted Mike Lodge in Defendant's Corporate Office. Mr. Lodge refused to contact Plaintiff or investigate his claims appropriately.

34.     Plaintiff continued to demand that Mrs. Siegel stop sexually harassing him, in which she refused to do so.

35.     The harassment grew so severe that Plaintiff was left with no choice but to file a formal complaint with Defendant's Human Resources Department.

36.     In retaliation, Mrs. Siegel made false allegation regarding Plaintiff's work performance as well as altering Plaintiff's work hours.

37.     The work environment became so hostile that Plaintiff requested a transfer away from the private residence. Defendant denied his request.

38.     Plaintiff continued to report the sexual harassment and hostile work environment to Defendant, but to no avail. Defendant allowed the sexual harassment toward Plaintiff to continue.

39.     In retaliation for his complaints, each time Mrs. Siegel would see Plaintiff, she would glare at him and further create a hostile work environment. Mrs. Siegel's behavior became so overtly hostile it was noticed by Plaintiff's co-workers.

40.     Plaintiff was isolated and treated in a disparate manner as compared to similarly situated female co-workers.

41.     As time passed, Plaintiff became more and more fearful of making additional reports to management as no remedial action was taken when he reported it before. Plaintiff further feared Mrs. Siegel would make good on her threat to terminate Plaintiff if he continued to escalate his concerns.

42.     Plaintiff retained the undersigned to assist him with the untenable work situation.

43.     Plaintiff filed his Original EEOC Charge of Discrimination on August 26, 2019.

44.     Due to Plaintiff's sex, opposition to the severe and pervasive sexual harassment, and his engagement in protected activity, Defendant terminated Plaintiff's employment on September 10, 2019 citing purely pretextual reasons.

45.     Plaintiff is not the only male employee Mrs. Siegel has subjected to severe and pervasive sexual harassment.   It is believed she treated Chef Vinnie in the same manner.

46.     Plaintiff has been damaged by Defendant's illegal conduct.

47.     Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## Count I: Sex Based Discrimination in Violation of Title VII

48.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-47 above.

49.     At all times relevant to this action, Plaintiff was in a protected category under Title VII because of Plaintiff's sex, male.

50.     Defendant engaged in intentional sex discrimination in the terms and conditions of Plaintiff's employment including but not limited to Plaintiff's termination.

51.     Defendant's conduct violates Title VII.

52.     The Plaintiff has satisfied all statutory prerequisites for filing this action.

53.     Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

54.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

55.     Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### Count II: Sexual Harassment in Violation of Title VII

56.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-47 above.

57.     Defendant subject Plaintiff to severe and pervasive sexual harassment.

58.     Despite Plaintiff's reporting the harassment, Defendant took no action to remedy the situation or prevent future harassment.

59.     Defendant's conduct created and perpetuated a hostile work environment for Plaintiff.

60.     Defendant's conduct violates Title VII.

61.     The Plaintiff has satisfied all statutory prerequisites for filing this action.

62.     Defendant's violation of Title VII has caused the Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

63.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages.

64.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## Count III: Retaliation in Violation of Title VII

65.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-47 above.

66.     Plaintiff engaged in protected activity under Title VII while employed by Defendant.

67.     Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity, specifically Plaintiff's repeated reports regarding the discrimination and hostile work environment Plaintiff was experiencing.

68.     Defendant's conduct violated Title VII.

69.     Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which Plaintiff is entitled to damages.

70.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages.

71.     Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to punitive damages.

## Count IV: Sex Based Discrimination in Violation of the FCRA

72.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-47 above.

73.     At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of her his, male.

74.     Defendant is prohibited under the FCRA from discriminating against Plaintiff because of his sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

75.     Defendant violated the FCRA by discharging and discriminating against Plaintiff based on his sex.

76.     Defendant intentionally discriminated against Plaintiff on the basis of his sex.

77.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress for which he is entitled to an award of monetary damages and other relief.

78.     Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count V: Retaliation in Violation of the FCRA

79.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-47 above.

80.     Plaintiff engaged in protected activity under the FCRA.

81.     Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity.

82.     Defendant's conduct violated the FCRA.

83.     Defendant's discriminatory conduct, in violation of the FCRA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which he is entitled to damages.

84.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

85.     Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a)      Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b)      Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c)      Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gary Martoccio*
Gary Martoccio
Florida Bar No. 99040
Lisa Scheibly
Florida Bar No. 1010110
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
gary.martoccio@spielbergerlawgroup.com
lisa.scheibly@spielbergerlawgroup.com

*Counsel for Plaintiff*